OPINION AND ORDER
GARY P. SULLIVAN, Chief Justice.
BRIEF FACTUAL OVERVIEW AND PROCEDURAL HISTORY
On May 12, 1997, Joan Redstone (Joan), the maternal grandmother and physical care provider of two minor boys, filed a civil complaint seeking child support from Steve Tollefson (Steve), biological father of the two boys. A Summons was issued on June 2, 1997 and served on Steve June 24, 1997. Steve filed a hand-written answer to the complaint on June 30, 1997, stating that he had previously taken a Court ordered blood test brought on by the “Welfare Court”. He went on to state that he took the test in Glasgow, MT., and that he hired the services of Attorney Robert Hurley. He then referred “any other-questions” to Attorney Hurley’s office, by giving Hurley’s telephone number.
A default judgment was rendered on July 3, 1997. The default judgment ordered Steve to pay $400 per child per month.
On November 5, 1997, Steve filed a petition in the Tribal Court to set the default judgment aside. The Court granted Steve a hearing, ordering blood tests to be taken to determine paternity. After the blood tests were administered, trial was held in the matter of February 28, 2000. Following the February trial, the Court issued its order on May 2, 2000, as follows:
1. Paternity was established conclusively by the blood tests that Steve, as the biological father, was charged with the responsibility for the care and support of the two boys dating from their birth;
2. In establishing the child support obligation and arrearage, the Court considered “the estimated needs of the minor children”, the “ability of *353 (Steve) to make support payments”, the duration of Steve’s responsibility, and the date of Joan’s original complaint;
3. Child support payments were set at $150 per child, per month;
4. Payments to begin on August 3, 1997 and continue thereafter on the 3rd of each month until majority or emancipation;
5. Arrearage calculated by the Court to be $10,200 (34 months x $150 child = $5,100 per child x 2 children = $10,200);
6. Payments toward arrearage set at $25 per month per child until arrear-age is satisfied;
7. If arrearage remains when majority reached, arrearage payment per child is raised to $150 per month until satisfied;
8. Payments to be made payable to Joan;
9. Default judgment dated July 3,1997, previously entered by Court is vacated.
Steve petitions our Court to review this order citing various errors.
ISSUES PRESENTED
Steve challenges the Tribal Court order, alleging the court acted erroneously[1], in that:
1. Child support cannot be ordered until the date of determination of paternity.
2. The Court’s findings are inadequate to support the judgment rendered.
3. A non-Indian parent who resides on the Fort Peck Indian Reservation is entitled to the protections of the Montana Child Support Guidelines and the Tribal Court should adopt said guidelines to insure uniformity in child support awards.
4. The Court erred in ordering child support payments from the date ordered in a default judgment because the default was taken contrary to tribal law.

STANDARD OF REVIEW

The jurisdiction of the Court of Appeals shall extend to all appeals from final orders and judgments of the Tribal Court. The Court of Appeals shall review de novo all determinations of the Tribal Courts on matters of law, but shall not set aside any factual determinations of the Tribal Court if such determinations are supported by substantial evidence. Title II CCOJ 2000 § 202.
DISCUSSION
Issue # 1: Can the Court order child support payment from a putative father prior to the date paternity is established? General speaking, no. Child Support orders are a result of a legal duty borne by eaeh parent and a putative father is not, in the legal sense, a parent. However, the real question before us is whether the Court can order a child support payment retroactively once paternity is established. Steve argues that a (putative) father cannot be held liable for child support until his paternity is established. He believes that he was prejudiced by the entry of the default judgment. He further argues that the Court, after ordering retroactive child support, failed to determine whether or not the amount of support, which was ordered retroactively, was commensurate with his income at the time of the default. Steve offers no supporting *354 authorities and Ms argument is a bit late in coming.
First, the Court in its May 2nd order vacated the default judgment, thus rendering that portion of his argument moot. Secondly, the Court has ever right to order child support retroactively after paternity is established, provided that the putative father has notice that child support is being sought from Mm. That notice was given on June 24, 1997. Yet, the Court, in its order of May 2, 2000, did not commence child support until August 2, 1997. Steve is in error to suggest that his right to due process was violated by the retroactivity of the Court’s order. The day he received the summons (June 24, 1997) he was made aware of the legal proceeding. Assuming arguendo that the Court entered the default erroneously, such error is corrected by the Court vacating the defective default order. Thus, the default is a nullity and any prejudice occasioned by it vanishes. However, in vacating the default judgment, the Court does not vacate the notice that Steve concedes that he received on June 24, 1997. Once paternity was established, we believe the Court had the right to order child support from Steven from the date of that notice.
Issue # 2: The findings are inadequate to support the judgment rendered. Specifically, Steve argues that the order is completely void of any findings with regard to the parties’ income, he further states that the biological mother testified that she paid $150 per month for the support of the children; that Joan testified that she needed a total of $250 per month for the support of the children and yet the Court ordered Steve to pay $300 per month for support of the children. Thus, the Court ordered more support than even the petitioner requested and it ordered him to pay twice as much as the mother was paying when he and the mother earns substantially the same wage. Steve also points to other alleged disparities: 1) the mother’s payment are voluntary; his are Court ordered; 2) he has another child (with a different mother) living with him to support and the mother herein has no children living with her; 3) the parties’ respective living expenses were not considered, or if they were considered, they were considered improperly. Steve cites various Montana state cases that tend to support his arguments. Steve also points out that the Fort Peck CCOJ fails to provide objective criteria or any instructions whatsoever to guide the Tribal Court in making child support awards.
We have great respect for the Courts of Montana and, on occasion, we find many of their cases useful and instinctive in a particular matter. Title VIII CCOJ 2000 § 501(d). However, on this occasion, we respectfully decline such guidance. As will be show in the next issue, this Court must be careful to adhere to the law, not to create it.
Steve correctly points out the absence of objective criteria in our CCOJ regarding child support awards. Ironically, it is the very absence of criteria that deals Steve’s argument a fatal blow. How can this Court determine that the Tribal Court’s findings are inadequate when “adequacy” is not defined? Perhaps the Tribal Court felt that Steve had not provided for the care and support of these boys for the first several years of them lives[2] and, for that reason, he should pay more now. We would be the first to agree that if the Tribal Court did rely on this “playing catch up” argument, it should be found in the findings. We have consistently remanded cases that failed to set forth spe *355 cific criteria contained in the code. Owens v. Matthews, FPCOA # 336. However, we will decline to remand a case unless it can be shown that the law has been transgressed. Steve does argue at one point that the Court made findings without substantial evidence. However, his argument appears to be based upon the alleged disparities mentioned previously. To suggest that the Court came down on the wrong side of this evidence, one must know which side was ‘right’ in the first instance. In using the Montana cases for his support, Steve presupposes the “right” side based upon Montana law and then suggests that our Tribal Court made findings without substantial evidence (based upon Montana law). We cannot agree with this reasoning. We find no bases to support the contention that the Tribal Court’s order lacked ‘substantial evidence’.
Issue #3: Is a non-Indian parent who resides on the Fort Peck Indian Reservation entitled to the protections of the Montana Child Support Guidelines? As noted previously, Steve correctly points out that the Fort Peck Comprehensive Code of Justice is found wanting in terms of criteria or instructions regarding computation of a reasonable child support award. He also implies that if the Montana Child Support Guidelines were adopted, it would afford the Tribal Court objective criteria, which, in turn, would provide for uniform child support orders. He further implies that it would particularly appropriate to adopt and apply the Montana guidelines when ordering child support payments from non-Indian parents who are Montana residents. Steve states adopting the guidelines could be accomplished using Title VIII CCOJ 2000 § 501(d).[3]
Steve makes a policy argument that begs for the proper forum: The Fort Peck Tribal Executive Board. On the other hand, Title II CCOJ 2000 § 104 allows the Chief Judge to fashion rules of Court subject to the approval of the Tribal Executive Board. It is not the function of the Fort Peck Court of Appeals to “fill in the gaps” in the Fort Peck CCOJ. Rather, our charge is to review petitions and appeals for eiTor and, in doing so, we are limited to interpreting existing law.
Steve offers no legal support for his proposition that non-Indian parents residing on the Fort Peck Indian Reservation are entitled to “protection” of the Montana Child Support Guidelines. Indeed, if that were the case, and if Fort Peck did fashion its- own Child Support Guidelines, members of the Fort Peck Indian Reservation, living in New York, would likewise be entitled to the protection afforded them by the Tribes. We think Steve’s proposition fails based upon the foregoing juxtaposition alone.
Issue # 4: The Tribal Court erroneously ordered child support to commence on date previously set in a default judgment that was erroneously issued. We dealt with this issue in Issue # 2 above.
CONCLUSION
Steve’s argument that child support cannot be ordered retroactively from the date paternity is established fails when, as in this case, the putative father was placed on notice prior to such date. Likewise, his argument that the Court’s findings are inadequate to support the judgment rendered fads because there is no legally binding authority to define and support his notion of “adequacy”. The Tribal Court did not err when ordering child support coincidental with an alleged defective de *356 fault judgment when the putative father received notice that he was being sued for child support and the default judgment was later vacated.
While we agree that the adoption of child support guidelines for the Tribal Court would be beneficial, we decline to adopt such guidelines at the appellate level, leaving that work to either the Chief Judge of the Tribal Court or the Tribal Executive Board. A resident of one jurisdiction is not entitled to the protection of another jurisdiction unless there is an overriding federal constitutional protection. Accordingly,
IT IS NOW THEREFORE THE ORDER OF THIS COURT THAT:
The Tribal Court order is affirmed.
CONCUR: GERARD M. SCHUSTER, Associate Justice, CARROLL JAMES DECOTEAU, Associate Justice.

. [missing text].

. [missing text].

. [missing text].