OPINION AND ORDER
BACKGROUND
¶ 1 This matter came before the Fort Peck Appellate Court on a Notice of Appeal, filed October 8, 2015 by Ann Cantrell, challenging the award of child support order issued by the lower court on September 22, 2015. Appellant’s opening brief was filed January 7, 2016. Nothing in the record reflects that any responsive pleading was filed by Appellee McClammy.
¶ 2 On September 21, 2015, a child support hearing was held regarding the parties’ minor children. Appellee McClammy was represented by Terry Boyd at the lower court hearing. Appellant Cantrell appeared pro se at said hearing. Information regarding Appellants financial situation was provided to the lower court at the time of hearing.
¶ 3 As a result of this hearing the court ordered Appellant Cantrell to pay $1,150 per month in child support. Appellant argues this amount is unjustified and violates federal laws.
Statement of Jurisdiction
¶ 4 The Fort Peck Appellate Court has jurisdiction to review all final orders from the Fort Peck Tribal Court when a timely appeal is made. II CCOJ § 202. The order entered on September 22, 2016 is a final order and the appeal is deemed timely filed.
Issues
1. Did the lower court violate applicable federal law when it awarded child support?
2. Does the Code of Federal regulations apply to the award of child support by a tribal court?
3. Did the lower court abuse it discretion when it awarded $1,150 per month for child support given the information contained in the lower court record?
Standard of Review
¶ 5 This Court has long recognized that it will not disturb lower court factual findings if such findings are supported by substantial evidence. Nor will it overturn a lower court decision if the lower court does not abuse its discretion when making a final determination in custody and child support matters. Title II CCOJ § 202. See generally In the Matter of D.R.B. FPCOA # 327 (2001) and In the Matter of B.R.Y. FPCOA # 419 (2003). Questions of law, however, are reviewed de novo. Title II CCOJ § 202.
*447 Discussion
¶ 6 Appellant argues that in accordance with 25 U.S.C. § 410 monies derived from trust properties cannot be utilized by a court order to satisfy a debt without the approval and consent of the Secretary of Interior. This Court does not dispute Appellant’s characterization of this federal statute, but notes that the BIA may encumber an IIM account when it receives an order from a tribal court, with jurisdiction over a child support matter, requesting that specified IIM funds be used to satisfy the child support award. 25 C.F.R. § 115.601(b)(1). After reviewing the lower court order, however, this Court finds nothing in that order which in any manner requires that monies from trust properties be used to satisfy the child support awarded. Absent some type of tribal court order specifically requesting that an IIM account be encumbered to satisfy child support, this regulation is not triggered simply by imposing child support which takes into account revenues of a parent derived from trust property. Nothing in the language of 25 U.S.C. § 410 prohibits this type of asset evaluation when a tribal court is determining appropriate child support awards.
¶ 7 The imposition of child support is an obligation imposed on parents of minor children to insure a child’s needs are adequately met. In accordance with various federal laws, all states must establish guidelines for setting and modifying child support award amounts. Child support guidelines help courts set uniform award amounts in child support orders and are largely based on financial information from one or both parents. These guidelines identify specific criteria which a court should consider when computing the support obligation. Factors used to determine the ability of a parent to pay support include information on a parent’s wages, other income, and assets. While these state guidelines allow for greater standardization in child support awards, they also limit a court’s ability to address child support needs in any format other than monetary awards. Tribes do not have the same federal mandate as states for establishing child support guidelines. Given the role of custom and tradition in tribal decision making, other factors may go into the decision-making process for tribal courts. In the absence of tribal statutory criteria, tribal courts have broad discretion when determining what factors can be considered when calculating child support and how child support will be satisfied.
¶8 Although the concept of child support is mentioned in Titles 8, 9 and 10 of the Fort Peck Comprehensive Code of Justice, there is virtually no guidance provided regarding what factors should be used when determining an appropriate child support amount. Given the lack of any substantive tribal legislation guiding child support calculation matters, the lower court cannot be found to have abused its discretion when determining appropriate child support so long as the lower court record can support the final child support award based on judicially accepted calculation methods. Redstone v. Tollefson, 3 Am. Tribal Law 351 (2001). Any specific limits on this discretion must be dictated through the tribal legislative process and not imposed by this Court.
¶ 9 Generally, courts make a child support determinations based on a child’s basic living needs, such as housing, food, medical, and educational costs. It may also consider various “standard of living” issues associated with the involved parties. When determining appropriate child support, courts may also consider the available resources, income and needs of the custodial and non-custodial parent; the paying parent’s ability to pay; the total *448 number of children requiring support by a parent; and what the children’s standard of living would be if the parents were currently together. Without legislative parameters, courts can choose between various formulas for calculating support. Common approaches for determining child support include using a strict percentage of the non-custodial parent’s income; an income sharing model between the parents; or some type of blended or alternative method which reflects the needs of the child and the abilities of the parents to provide support. Any methods which reflect a reasoned approach by the lower court will survive scrutiny under abuse of discretion review when there are no statutorily imposed limitations on the method to be used when establishing appropriate child support.
¶ 10 As a tribally-operated justice system, the Fort Peck Tribal Court must follow its own tribal code when determining the scope of its authority. A-though not applicable to this court system, a review of federal regulations for C.F.R. courts reveals that the factors identified above are consistent with those C.F.R. courts are required to utilize when determining child support. 25 C.F.R. § 11.608(b)(3). The similarity in child support calculation methods between C.F.R. courts and tribal or state courts reflects the underlying purpose of child support calculation, which is to maintain the highest standard of living reasonably possible for a child, even when the parents are no longer together. For this reason, a lower court’s child support calculation will be upheld as reasonable if the record supports any calculation methods commonly utilized by courts.
¶ 11 In this matter, the lower court record reflects that Appellant Cantrell testified she was receiving approximately seven thousand dollars [$7000.00] per month in payment from trust properties for the six-month period prior to the hearing date, or approximately forty-two thousand dollars [$42,000]. The records from her Individual Indian Monies [IIM] account showed she received around one hundred sixty thousand dollars [$160,000] in payments between February 2015 and August 2015. The lower court’s award of five hundred and seventy-five dollars [$575.00] per month, per child represents less than twenty percent [20%] of the revenues she testified to receiving per month and less than one percent [1%] of the revenues reflected by the IIM account records. Assuming the lower court’s calculation was based on the least amount of earnings Appellant could have received during the prior six months, this Court must now determine whether this amount is excessive.
¶ 12 In evaluating whether this amount could be considered as excessive, this Court looks to other provisions of the tribal code for direction. The garnishment provisions in Title 8 of the tribal code is one place where guidance is provided on reasonable payment amounts to satisfy recognized obligations. Title 8 § 311 CCOJ. Under this section of the tribal code wages subject to garnishment must be less than (1) twenty-five per cent (25%) of the judgment debtor’s disposable wages for that work week, or (2) the amount by which the judgment debtor’s disposable wages for that week exceed forty (40) times the federal minimum hourly wage time in effect at the earnings are payable. Title 8 § 311(b) CCOJ. Given that the child support award in this case is far less than either of these statutorily imposed limits, this Court does not find the amount awarded to be excessive. Nothing in the lower court record reflects an abuse of discretion by the lower court in this matter.
*449 ¶ 13 Appellant’s concerns about changes in her royalty payments impacting her ability to pay the ordered amount can be addressed through a request to modify support if necessary. This request can be handled by filing an appropriate motion with the lower court and does not place any undue burden on the appellant.
ORDER
¶ 14 This court finds no abuse of discretion by the lower court, or violation of applicable law. The lower court child support award is hereby affirmed. For clarity in child support awards, this matter is remanded to the lower court with direction to modify the child support order to reflect the per child amount of child support; when child support shall terminate for each child; what consequence for non-payment of support can be imposed; and what changes in circumstances can justify a request to modify.
SO ORDER.